**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEESHA D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-15183 (ZNQ) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

      This matter comes before the Court upon Plaintiff Keesha D.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying her request for disability insurance benefits. (Compl., ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's appeal is granted.

**I.    BACKGROUND**

      In this appeal, the Court must determine whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.     **Procedural History**[2]

On January 2, 2018,[3] Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"). (AR 10, 174-75.) Plaintiff's application alleges disability beginning July 23, 2015. (*Id.* at 10, 174.) On April 17, 2018, Plaintiff's application was denied (*Id.* at 10, 61-78.) On June 22, 2018,[4] Plaintiff's application for reconsideration was also denied. (*Id.* at 10, 80-97.) On August 8, 2019, the ALJ held a hearing on Plaintiff's application. (*Id.* at 10, 36-60.) Following the hearing, on October 8, 2019, the ALJ issued a decision denying Plaintiff's DIB application and finding that she was "not disabled." (*Id.* at 10-23.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) Plaintiff then filed an appeal to this Court. (*See generally* Compl., ECF No. 1.) On May 25, 2022, Plaintiff filed her moving brief in this action. (ECF No. 19.) The Commissioner opposed (ECF No. 23), and Plaintiff did not reply.

B.     **The ALJ's Decision**

On October 8, 2019, in his written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 10-23.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 11-12.) At step one, the ALJ found that Plaintiff did not engage in

---

[2] The Administrative Record ("AR") is located at ECF Nos. 9 through 9-8. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] In the ALJ's written decision, he writes that Plaintiff filed her Title II application on December 29, 2017. (AR 10.) The Court, however, uses the date listed on Plaintiff's application in the AR, January 2, 2018. (*Id.* at 174.)

[4] In the ALJ's written decision, he writes that Plaintiff's Title II application was denied reconsideration on June 25, 2018. (AR 10.) The Court, however, uses the date listed in Plaintiff's denial of reconsideration in the AR, June 22, 2018. (*Id.* at 97.)

substantial gainful activity during the relevant period. (*Id.* at l2.) At step two, the ALJ determined that Plaintiff had fourteen severe impairments: 1) fibromyalgia; 2) obesity; 3) degenerative joint disease; 4) allergic rhinitis; 5) bipolar disorder; 6) anxiety; 7) post-traumatic stress disorder; 8) irritable bowel syndrome; 9) gastritis; 10) gastroesophageal reflux disease; 11) hypertension; 12) diabetes mellitus; 13) migraine headaches; and 14) asthma. (*Id.* at 13.) Despite the ALJ finding Plaintiff had over a dozen severe impairments, he determined during his step-three analysis that those impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listed Impairments"). (*Id.* at 13-16.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 [C.F.R.] 404.1567(a)," with several caveats.[5] (*Id.* at 16-22.) At step four, the ALJ found that based on Plaintiff's RFC, she was unable to perform any past relevant work. (*Id.* at 22.) At step five, however, the ALJ found that "jobs . . . exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 22-23.) Specifically, the ALJ concluded that within Plaintiff's RFC, she could perform the necessary duties of an assembler, table worker, or envelope addresser. (*Id.* at 23.) Based on the above findings, the ALJ concluded that Plaintiff had not been under disability "from July 23, 2015, through the date of [the ALJ's] decision." (*Id.*)

---

[5] While the ALJ found that Plaintiff could perform sedentary work, he also concluded that Plaintiff can "never climb ladders, ropes, or scaffolds. [Plaintiff] can never be exposed to unprotected heights or hazardous machinery. [Plaintiff] can occasionally climb stairs and ramps. [Plaintiff] can never crawl. [Plaintiff] can occasionally kneel, stoop, and crouch, and can occasionally reach overhead. [Plaintiff] can frequently reach in all other directions. [Plaintiff] can frequently finger and handle, and frequently balance. [Plaintiff] can never have exposure to extremes in environmental conditions or concentrated pulmonary irritants. [Plaintiff] can have occasional contact with supervisors, co-workers, and the public. [Plaintiff] is able to do only simple and routine tasks. [And Plaintiff] is able to wear shaded lenses during work hours and can have only occasional exposure to noise greater than moderate levels." (AR 16-17.)

This appeal concerns the ALJ's step-three and RFC determinations. The ALJ's findings for each of these determinations are set forth below.

1. *Step-Three Determinations*

At step three, the ALJ considered evidence of Plaintiff's severe impairments but determined that her numerous impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment in the Listed Impairments. (*Id.* at 13.) In so concluding, the ALJ considered listings 1.02, 3.03, 4.00, 5.06, 9.00, 12.04, 12.06, and 12.15. (*Id.* at 13-15.) The ALJ also considered Social Security Rulings ("SSR") 12-2p, 19-2p, and 19-4p. (*Id.* at 14-15.)

In considering listings under 1.02 (major dysfunction of a joint), 3.03 (asthma), 5.06 (inflammatory bowel disease), and 9.00 (endocrine disorders), the ALJ stated his findings before concluding that Plaintiff did not "meet or medically equal" the listings. (*Id.* at 13-14 (analyzing Plaintiff's major dysfunction of a joint and finding, in part, that "there is no involvement of a major weight bearing joint resulting in the inability to ambulate effectively as defined in listing 1.00B2b").) The ALJ, however, primarily referred to his RFC analysis for his reasoning and evidence supporting his conclusions. (*See, e.g.*, *id.* at 13 (stating Plaintiff "does not meet or medically equal listing 1.02 (major dysfunction of a joint), because the record, consistent with the findings below, does not demonstrate" any of the requisite medical conditions.).) In considering the listing under 4.00 (hypertension), the ALJ found "the record does not indicate [Plaintiff's] hypertension has affected any body system so severely to meet a listing" and provided citations to the record to substantiate his findings. (*Id.* (citing eleven exhibits in the AR).)

In considering SSR 12-2p (used to evaluate fibromyalgia), the ALJ again referred to his RFC analysis in concluding that the medical evidence failed to show Plaintiff meets the

requirements set forth in SSR 12-2p. (*Id.* at 14.) Similarly, in considering SSR 19-4p (migraine headaches), the ALJ referred to his "[RFC] findings below" to establish that the medical evidence failed to show Plaintiff's migraine headaches "alone or in combination with other impairments, were of such a severity as to meet a relevant listing." (*Id.* at 14-15.) The ALJ also noted that no medical expert testified that Plaintiff's migraine headaches, "alone or in combination with other impairments, meet or medically equal a relevant listing." (*Id.* at 15.)

The ALJ next considered Plaintiff's mental health impairments under the criteria listed in 12.04, 12.06, and 12.15 and concluded that Plaintiff's impairments did not meet the criteria. (*Id.* at 15.) In so concluding, the ALJ assessed four criteria ("Paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 18-22); 20 C.F.R. § 404, Subpart P. App. 1 §§ 12.04, 12.06, 12.15. When assessing each of these criteria, the ALJ could find that Plaintiff had either: (a) no limitation; (b) mild limitation; (c) moderate limitation; (d) marked limitation; or (e) extreme limitation.[6] In making his conclusions as to each of these four criteria, the ALJ provided record cites and reasoning to substantiate his findings. (*Id.* at 15-16; *see, e.g*, *id.* at 16 (providing the ALJ's consideration of criterion three, where he in part notes that "during [Plaintiff's] most recent consultative evaluation, [Plaintiff's] attention and concentration were intact, and she was able to do counting, simple calculations, and serial 3s. Further, while there were instances when [Plaintiff's] attention and concentration were impaired, they were generally intact during examinations" and citing at least ten exhibits to support his conclusion).) Ultimately,

---

[6] In order to satisfy the Paragraph B criteria at step three, an individual's mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. (AR 15; 20 C.F.R. 404, Subpart P. App.1. § 12.00(F)(2).)

the ALJ concluded that Plaintiff had only a moderate limitation as to each of the four criteria, which was insufficient to meet the criteria of listing 12.04, 12.06, and 12.15. (*Id.*)[7]

Finally, and separately, the ALJ considered Plaintiff's obesity under SSR 19-2p. (*Id.* at 14.) Specifically, he "considered the exacerbatory impact of [Plaintiff's] obesity in determining whether [Plaintiff's] impairments were of such severity as to meet or medically equal a relevant listing." (*Id.*) After citing Plaintiff's body mass index ("BMI") the ALJ concluded that "the evidence does not support a finding that [Plaintiff's] weight compounded [her] other physical impairments such that they would meet or medically equal a listing." (*Id.*) Other than providing citations for Plaintiff's BMI, the ALJ provided no other evidence or reasoning for his conclusions. (*See id.*) The ALJ also did not refer to any reasoning in his RFC analysis to support his findings. (*See id.*)

2. *RFC Determinations*

As to Plaintiff's RFC, the ALJ concluded Plaintiff could perform sedentary work under certain conditions. (*Id.* at 16.) The ALJ came to this conclusion after finding that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 17.) The ALJ then considered seven related subsets of the fourteen severe impairments found under step two. (*Id.* at 17-22 (considering Plaintiff's degenerative joint disease and fibromyalgia collectively (Subset One); Plaintiff's irritable bowel syndrome, gastroesophageal reflux disease and gastritis collectively (Subset Two); Plaintiff's hypertension and migraines

---

[7] The ALJ also considered whether paragraph C criteria were satisfied but concluded that the evidence failed to establish the presence of the paragraph C criteria. (AR 16.) Plaintiff did not dispute this finding. (*See generally* Pl.'s Moving Br., ECF No. 19.)

collectively (Subset Three); Plaintiff's diabetes mellitus individually (Subset Four); Plaintiff's asthma and allergic rhinitis collectively (Subset Five); Plaintiff's obesity individually (Subset Six); and Plaintiff's mental conditions collectively (Subset Seven)).) The Court recites only a sampling of the ALJ's analyses to evidence his approach to his findings generally, with the exception of Plaintiff's obesity analysis.

First, the ALJ considered Plaintiff's degenerative joint disease and fibromyalgia. (*Id.* at 18.) The ALJ began his analysis by citing evidence of Plaintiff's examinations showing "normal gait and posture; intact sensation; normal full range of motion in all joints; normal muscle strength . . . [and] normal manipulative functions[,]" among other findings. (*Id.*) The ALJ then considered less optimal findings in the record such as Plaintiff's "slow gait; tenderness in [Plaintiff's] upper extremities; slouched posture . . . [and] positive fibromyalgia tender points" among other less optimal evidence. (*Id.*) With this evidence established, the ALJ concluded by noting that Plaintiff "actively denied symptoms during the relevant period, including fatigue, muscle pain, and joint pain[,]" and Plaintiff's "fibromyalgia had improved with medication in March 2019," suggesting Plaintiff had the RFC to "work at the sedentary level with additional postural, environmental, and manipulative limitations." (*Id.* (citing over fifteen exhibits to support his conclusions).)

The ALJ then turned to Plaintiff's irritable bowel syndrome, gastroesophageal reflux disease, and gastritis. (*Id.*) The ALJ again began his analysis by citing evidence that Plaintiff's "[e]xaminations show [] no abdominal abnormalities . . . and normal bowel sounds." (*Id.*) The ALJ then cited less optimal findings like Plaintiff "underwent an esophagram in March 2016, which revealed a moderate sized sliding esophageal hiatus hernia" and Plaintiff has "epigastric and bilateral upper quadrant tenderness." (*Id.*) The ALJ concluded by noting that Plaintiff "denied symptoms during the relevant period, including nausea, vomiting, abdominal pain, and diarrhea"

and Plaintiff's "gastroesophageal reflux disease, gastritis, and irritable bowel syndrome were stable with medication in March 2019." (*Id.*) As such, the ALJ found that Plaintiff's "complaints regarding her need to use the bathroom, and her physical examination findings showing epigastric and bilateral upper quadrant tenderness" required limiting Plaintiff to sedentary work. (*Id.* (citing over twenty exhibits to support his conclusions).)

The ALJ's remaining analyses of Plaintiff's hypertension, migraines, diabetes mellitus, asthma, and allergic rhinitis followed the above logical pattern, wherein the ALJ cited evidence both supporting Plaintiff's claims as to the severity of her symptoms and negating those claims before reasoning a decision on how these severe impairments affected her RFC. (*Id.* at 17-19.) The ALJ also separately assessed Plaintiff's mental impairments, analyzing medical evidence for and against Plaintiff's disability claims before reaching a conclusion. (*Id.* at 19-22 (taking note of Plaintiff's described impairments, citing evidence suggesting the mental impairments are improving or are not severe, citing evidence that suggests the impairments are severe, and directly addressing evidence submitted by Kim Arrington, Psy.D. before determining Plaintiff's RFC.).)

The ALJ separately considered Plaintiff's obesity and found:

> [Plaintiff's overall] condition is compounded by her obesity and she was counseled regarding weight loss (Exhibit 10F; 14F/10). [The ALJ] considered the impact of [Plaintiff's] obesity in exacerbating the problems and functional limitations caused by her other impairments in accordance with SSR 19-2p. Considering the claimant's elevated [BMI], [the ALJ] limited the claimant to work at the sedentary level with additional postural limitations.

(*Id.* at 19.) No other analysis or reasoning is provided as to the effects of Plaintiff's obesity alone, or in combination with any of the other subsets of severe impairments she has. (*Id.*)

## II.     LEGAL STANDARD

### A.     Standard of Review

On appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided the issue differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the review must be a qualitative exercise requiring thorough examination of the ALJ's decision and the record:

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict

9

> created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). If the ALJ has not done this and has not sufficiently explained the weight given to the evidence, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citation omitted). The ALJ must state both the evidence that he considered as well as the evidence that he rejected. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.")[8] (internal citation omitted).

### B. Establishing Disability

To be eligible for DIB, a claimant must be unable to "engage in any substantial gainful activity [('SGA')] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). For purposes of the statute,

---

[8] The ALJ need not, however, undertake an exhaustive discussion of the evidence. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

For the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). If the first two steps are satisfied, the third requires the claimant to provide evidence that her impairment "meets or equals" an impairment listed in Appendix 1. *See id.* § 404.1520(a)(4)(iii). If the claimant demonstrates sufficient evidence under the third step, she is presumed to be disabled and is automatically entitled to disability benefits. *See id.* § 404.1520(a)(4)(v). If she cannot so demonstrate, however, the eligibility analysis proceeds to step four. *See id.* § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can continue the work that she performed pre-impairment, then she is not "disabled" and not entitled to disability

benefits. *See id.* § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See id.* § 404.1520(g).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her RFC, age, education, and past work experience. *See id.*; *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *See* 20 C.F.R. § 404.1520(g).

### III.  DISCUSSION

Plaintiff appeals the ALJ's written decision and raises two arguments in support of remand or reversal. First, Plaintiff contends that the ALJ failed to assess Plaintiff's obesity together with Plaintiff's other severe impairments at step three. (Pl.'s Moving Br. 9-19.) Second, Plaintiff contends the ALJ's RFC decision is not supported by substantial evidence. (*Id.* at 19-36.)

The Court considers each of these arguments below and remands the ALJ's decision so that the ALJ can properly assess Plaintiff's obesity.

#### A.  The ALJ's Step-Three and RFC Findings as to Plaintiff's Obesity are not Supported by Substantial Evidence

Plaintiff first argues that the ALJ's consideration of Plaintiff's obesity "merely records [P]laintiff's . . . high body mass indices before issuing an announcement, unadorned by explanation, evidence[,] or reasoning, that her morbidly obese body habitus would not exacerbate her other severe impairments to the point of medical equivalence." (Pl.'s Moving Br. 15.) Defendant contends in opposition that the ALJ considered all evidence in the record and that "Plaintiff cannot persuasively point to any additional limitations caused by the combination of her impairments that were not already included in the comprehensive RFC assessment." (*See* Def.'s Opp'n Br. 11, 12, 14, ECF No. 23.)

At the third step in the sequential evaluation process, a claimant will be considered disabled where a claimant has an impairment or combination of impairments that meet(s) durational requirements and meet(s) or equal(s) the criteria for Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). "In making a determination at step three, an ALJ should set forth the evidence he found persuasive, the evidence he rejected, and his reasoning." *Walker v. Comm'r Soc. Sec.*, No. 18-17172, 2020 WL 1531384, at *3 (D.N.J. Mar. 31, 2020) (citing *Cotter*, 642 F.2d at 705-07). In doing so, however, the Third Circuit does not require "the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765-66 (3d Cir. 2016) (internal quotation mark and citation omitted).

"A claimant's RFC reflects 'what [the claimant] can still do despite [his or her] limitations.'" *Morris v. Comm'r Soc. Sec.*, No. 19-13744, 2020 WL 2764803, at *4 (D.N.J. May 28, 2020) (citing 20 C.F.R. § 416.945(a)). The regulations are clear that the RFC determination is expressly reserved for the Commissioner rather than any medical source. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c)). As such, an ALJ is free to credit one medical opinion over another. *Chambers v. Kijakazi*, No. 21-20678, 2022 WL 10490548, at *7 (D.N.J. Oct. 18, 2022) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009)). Where a conflict in medical evidence exists, however, the ALJ cannot reject evidence for no reason or for the wrong reason. *Diaz*, 577 F.3d at 505. Instead, "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Id.* (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Under SSR 19-2p, "[o]besity can . . . be classified as a severe impairment 'if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities.'" *Williams v. Comm'r Soc. Sec.*, No. 20-12254, 2022

WL 279838, at *7 (D.N.J. Jan. 31, 2022) (citing SSR 19-2p). SSR 19-2p dictates that "the ALJ 'will not make general assumption[s] about the severity or functional effects of obesity combined with another impairment(s)'" while recognizing "'[o]besity in combination with another impairment[s] may or may not increase the severity or functional limitations of the other impairment.'" *Id.* (quoting SSR 19-2p). An ALJ must "'evaluate each case based on the information in the case record.'" *Id.* (citation omitted).

The Third Circuit has held that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and every subsequent step." *Marilyn G.D. v. Comm'r Soc. Sec.*, No. 21-494, 2022 WL 855684, at *7 (D.N.J. Mar. 22, 2022) (citing *Diaz*, 577 F.3d at 504). In *Diaz*, while the ALJ found that the claimant's obesity was a severe impairment, the Third Circuit noted that the ALJ "failed to consider its impact, in combination with her other impairments, at step three, as required." *Diaz*, 577 F.3d at 503. The *Diaz* court then held that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ's decision. *Id.* at 504.

Here, as in *Diaz*, the ALJ erred by failing to discuss Plaintiff's obesity in combination with her thirteen other severe impairments, both at step-three and in evaluating her RFC. (AR 14, 19.) Plaintiff's morbid obesity is well documented on the record. (*See id.* at 196, 277, 324, 327, 328, 376, 377, 416-18, 423, 460, 472-73, 548, 551, 554, 563, 580, 582, 583, 586, 591, 646, 685, 704, 707, 709, 724, 736-37, 744, 752, 758, 800, 806, 819, 831, 844, 848.) There is also no conclusive indication in the voluminous record that Plaintiff's obesity does not impact her ability to work, when considered alone or in combination with other medical conditions. (*See, e.g., id.* at 746, 848 (providing a physician's assessment that Plaintiff suffers from "severe obesity" and providing

14

another medical note that a physician advised Plaintiff that a "10% reduction in body weight is associated with significant improvement in knee pain" before referring Plaintiff to physical therapy); *cf. Tosha E. v. Comm'r Soc. Sec.*, No. 21-11502, 2022 WL 2763557, at *8 (D.N.J. July 15, 2022) (finding that where evidence in the administrative record clearly shows a claimant made representations that her obesity was not a significant problem and the record did not otherwise contain evidence suggesting her obesity was a problem, an ALJ did not err in cursorily discussing a claimant's obesity, unlike the case here, where the administrative record shows that Plaintiff's obesity was routinely listed as a concern on medical reports and that Plaintiff shared that concern).)

At step three, the ALJ does not engage in any meaningful discussion of Plaintiff's obesity before making conclusions, much less evaluate the effects of Plaintiff's obesity in combination with any of her other thirteen severe impairments. *Diaz*, 577 F.3d at 504 (making clear that an ALJ must in some way analyze the "cumulative impact of [a claimant's] obesity and other impairments on her functional capabilities"). The ALJ simply states that he "considered the exacerbatory impact of [Plaintiff's] obesity in determining whether the claimant's impairments were of such severity as to meet or medically equal a relevant listing." (AR 14.) After only citing Plaintiff's BMI, the ALJ concludes that "the evidence does not support a finding that [Plaintiff's] weight compounded [her] other physical impairments such that they would meet or medically equal a listing." (*Id.* (providing only that Plaintiff's BMI "was 43.7 kg/m² in January 2016, 50.3 kg/m² in February 2017, and 45.34 kg/m² in January 2018".) Significantly, the ALJ's brief conclusions as to Plaintiff's obesity at step three require the Court to speculate as to whether the ALJ "consider[ed] all the evidence" in rendering his decision because the ALJ offers no "reason for discounting" evidence other than that of Plaintiff's BMI. *Diaz*, 577 F.3d at 505 ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful

judicial review."). This absence of reasoning and discussion is unlike the ALJ's treatment of Plaintiff's other thirteen severe impairments at step three, where he provides his reasoning or refers to a comprehensive RFC analysis to support his step-three findings. (AR 13-15.)

Even if the ALJ did refer to his RFC findings with respect to Plaintiff's obesity, the Court still cannot determine whether the ALJ's decision is based on substantial evidence. In evaluating Plaintiff's RFC, the ALJ provides only that "[Plaintiff's overall] condition is compounded by her obesity and [that] she was counseled regarding weight loss" before concluding that he considered the "impact of the claimant's obesity in exacerbating the problems and functional limitations caused by her other impairments." (*Id.* at 19.) In so concluding, the ALJ provides only two citations to the record, both exhibits citing Plaintiff's BMI, which represent a small portion of the evidence in this case noting Plaintiff's BMI or morbid obesity. (*Id.* at 415, 554; *but see id.* at 196, 277, 324, 327, 328, 376, 377, 416-18, 423, 460, 472-73, 548, 551, 563, 580, 582, 583, 586, 591, 646, 685, 704, 707, 709, 724, 736-37, 744, 752, 758, 800, 806, 819, 831, 844, 848.)

As the ALJ in evaluating Plaintiff's obesity provides only cursory conclusions at step three and in his RFC determinations, there is no way of knowing whether the ALJ's conclusion that Plaintiff is not disabled and can engage in sedentary work is based on substantial evidence. *See Marilyn G.D.*, 2022 WL 855684, at *8 (remanding an ALJ's decision for specific findings on obesity where it was "unclear how due consideration of obesity would have changed the outcome of the ALJ's analysis at step three"); *cf. Forty v. Comm'r Soc. Sec.*, No. 21-6519, 2022 WL 2981001, at *5 (D.N.J. July 28, 2022) (finding courts considering a claimant's obesity repeatedly take note of how obesity can worsen musculoskeletal, respiratory, or cardiovascular problems, some of which Plaintiff is afflicted with in this case) (collecting cases).

As such, the Court remands this matter to the ALJ for specific findings as to the effects of obesity at step three and in the ALJ's RFC analysis.

> **B.    The Remainder of the ALJ's RFC Findings are Supported by Substantial Evidence[9]**

Plaintiff also challenges the ALJ's determination that Plaintiff is capable of sedentary work separate and apart from her challenge based on shortcomings in the ALJ's decision with respect to evaluating Plaintiff's obesity. (Pl.'s Moving Br. 19, 25, 26.) Specifically, Plaintiff contends that the ALJ's determination is not supported by substantial evidence because the ALJ did not assess Plaintiff's ability to sit, stand, walk, lift, or carry during an eight-hour workday before concluding Plaintiff can perform sedentary work. (*See id.* at 28.) Plaintiff further contends that a "function-by-function analysis," as required by SSR 96-8p, is necessary for a proper evaluation. (*Id.* at 25-26.)

"[T]here is no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). An ALJ must "sufficiently address[] the medical evidence," but the ALJ is not required to address "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Instead, so long as the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors and all the evidence in a case before reaching his conclusions, an ALJ's RFC determination sufficiently relies

---

[9] The Court notes that Plaintiff's RFC may change when the ALJ fully evaluates Plaintiff's obesity. Nonetheless, the Court finds the ALJ's evaluation of other impairments sufficient to satisfy the substantial evidence standard.

on substantial evidence for purposes of this Court's review. *See Williams*, 2022 WL 279838, at *9 (citing *Jones*, 364 F.3d at 505).

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work with a plethora of accommodations.[10] (AR 16-17.) Importantly, apart from his shortcomings in assessing obesity, the ALJ supported his RFC finding of sedentary work with ample evidence and explained his rationale for his findings as to Plaintiff's other thirteen impairments in detail. (*Id.* at 16-22.) For example, in assessing Plaintiff's irritable bowel syndrome, gastroesophageal reflux disease, and gastritis, the ALJ cited evidence suggesting these conditions did not greatly impact Plaintiff's ability to work including "[e]xaminations show[ing] no abdominal abnormalities . . . and normal bowel sounds." (*Id.*) The ALJ then cited findings that suggest Plaintiff's condition may negatively impact her ability to work where he noted Plaintiff "underwent an esophagram in March 2016, which revealed a moderate sized sliding esophageal hiatus hernia" and Plaintiff had "epigastric and bilateral upper quadrant tenderness." (*Id.*) The ALJ, however, concluded by finding that Plaintiff "denied symptoms during the relevant period, including nausea, vomiting, abdominal pain, and diarrhea" and Plaintiff's "gastroesophageal reflux disease, gastritis, and irritable bowel syndrome were stable with medication in March 2019." (*Id.*) From this evidence, the ALJ concluded that Plaintiff's "complaints regarding her need to use the bathroom, and her physical

---

[10] As noted above, while the ALJ found that Plaintiff could perform sedentary work, he also concluded that Plaintiff can "never climb ladders, ropes, or scaffolds. [Plaintiff] can never be exposed to unprotected heights or hazardous machinery. [Plaintiff] can occasionally climb stairs and ramps. [Plaintiff] can never crawl. [Plaintiff] can occasionally kneel, stoop, and crouch, and can occasionally reach overhead. [Plaintiff] can frequently reach in all other directions. [Plaintiff] can frequently finger and handle, and frequently balance. [Plaintiff] can never have exposure to extremes in environmental conditions or concentrated pulmonary irritants. [Plaintiff] can have occasional contact with supervisors, co-workers, and the public. [Plaintiff] is able to do only simple and routine tasks. [And Plaintiff] is able to wear shaded lenses during work hours and can have only occasional exposure to noise greater than moderate levels." (AR 16-17.)

examination findings showing epigastric and bilateral upper quadrant tenderness" required limiting Plaintiff to sedentary work. (*Id.*)

The ALJ structured his analysis for Plaintiff's severe impairments, other than her obesity, in this manner, and such structure and assessment of the evidence is sufficient to "permit meaningful review" by this Court. *Tompkins*, 2013 WL 1966059, at *13. The ALJ is under no obligation to parse out every detail of a functional analysis, and the Court is more than capable of inferring the ALJ's determinations as to Plaintiff's ability to sit, stand, walk, lift, or carry during an eight-hour workday based on the ALJ's extensive discussion of the evidence. *Susan B. v. Comm'r Soc. Sec.*, No. 21-12012, 2023 WL 1997694, at *5 (D.N.J. Feb. 14, 2023) (citing *Brown v. Comm'r Soc. Sec.*, No. 08-6314, 2009 WL 2905434, at *4 (D.N.J. Sept. 8, 2009) (finding that inferential reasoning by an ALJ is appropriate so long as "it does not affect the Court's ability to conduct a judicial review and conclude that the ALJ considered all probative evidence in rendering his decision"). As such, outside the lack of consideration for Plaintiff's obesity, there is no indication in the ALJ's decision that he failed to rely on substantial evidence in rendering his RFC decision. Instead, the Court finds the only error the ALJ made was failing to consider obesity in the same manner he discussed the other severe impairments in this matter.

IV.   **CONCLUSION**

For the reasons stated above, the Court grants Plaintiff's appeal of the Commissioner's final decision. The Court will issue an Order consistent with this Memorandum Opinion.

Date: March 30, 2023

                                                                                    ZAHID N. QURAISHI
                                                                                    **UNITED STATES DISTRICT JUDGE**